## UNITED STATES DISTRICT COURT
## MIDDLE  DISTRICT OF FLORIDA

**PATRICIA KENNEDY**,

        Plaintiff,

v.                              Case No: 8:18-cv-1945-JSM-SPF

**BENITO LeCOCHE,**

        Defendant,

_____/

### PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS, LITIGATION EXPENSES AND MEMORANDUM OF LAW

      This is an action for injunctive relief and attorneys' fees litigation expenses and costs pursuant to 42 U.S.C. §12181, *et seq*. ("Americans With Disabilities Act" or "ADA"). More specifically, the Plaintiff sought to compel the Defendant to comply with the requirements of  28 C.F.R. Section 36.302(e) with respect to the websites the Defendant owns and operates and websites the Defendant utilizes as the same pertain to the property known as "Riverside Inn." Notably, and in addition, the Plaintiff requested that the Defendant be ordered to *maintain*[1] its own website and the portions of other websites for which it is responsible in a state of

---

[1] *Haynes v. Hooters of America, LLC.*, 893 F.3d 781 (11th Cir. 2018); *See, Access For America, Inc. v. Zicheck Investments, Ltd.,* Case No. 8:01-cv-2228 (M.D.Fla. 2003)(policy of closing restrooms to public can be reversed);*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.,* 528 U.S. 167, 189 (2000), (shutting down a polluting factory did not moot a claim because defendant could resume operations at any time).

compliance [D.E. 1, p. 8, ¶ "b"].

On December 12, 2018, this Court awarded the Plaintiff all the relief she sought, determined that Ms. Kennedy was the prevailing party and, as such, "entitled to recover a reasonable attorney's fee including litigation expenses and costs" [D.E. 16]. Thus, the present motion.

This motion first discusses the reason lawsuits are required if the A.D.A. is enforced followed by a statement of what transpired in this case and an explanation of why the fees, litigation expenses, and costs being requested are fully warranted.

## I. "BUSINESSES DO NOT REGULARLY COMPLY WITH THE ADA."

– *A. Joseph Raetano v. Kally K's Inc.,* 2009 WL 651808, at *7 (M.D. Fla. 2009).

The ADA has been the law for more than twenty (20) years. The regulations involved in this case became effective March 15, 2012. Congress has never imposed a requirement on victims of disability discrimination that they give notice of the law's mandate prior to filing suit. *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F. 3d 1359, 60 (11th Cir. 2006). *also, Ramnarine v. R. G. Group*, 2012 WL 2735340*3-4.  Not only that, Congress has repeatedly refused to amend the law to require such notice *see, Raetano v. Kally K's Inc.*, 2009 WL 651808*6, n3, and has not done so to this day. Whatever may be said of requiring pre-suit notice in the abstract, the job of the Courts is "to apply the statutory language, not to re-write it," *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013)(citations omitted).

Reduced to its most basic form, Defendants' typical assertions that notice is required raises ignorance of the law to the status of a legally cognizable defense. To suggest that

property owners who have literally ignored an act of Congress would respond to a request from

the plaintiff to do what they were legally required to do is unworthy of credence. Perhaps not

surprisingly, giving notice has proven to be an exercise in futility.

### A.  "Giving Notice Simply Doesn't Work"

> - Patricia Kennedy, (Ex. A, ¶ 7).

Patricia Kennedy is a tester. At one point, she, and advocacy organizations with

which she was affiliated, actually tried to eliminate A.D.A. violations by advising property

owners that their premises were non-complaint. In her words:

> [W]e wrote letters and gave people notice and *it didn't do any*
> *good ... It doesn't work*."

(Ex A, ¶ 7)(italics added).

Bill Norkunas, of *Norkunas v. Seahorse NB, LLC.*, 444 Fed. Appx. 412 (11th

Cir.2011), fame, is a disabled individual, a consultant to governments, an occasional A.D.A.

plaintiff, and the principal of ADAhelp, Inc., an A.D.A. consulting firm. Mr. Norkunas found

that "very few businesses comply with the ADA voluntarily." It is far more cost effective," he

noted "to forestall ADA compliance until a particular property is actually and specifically sued."

Mr. Norkunas concluded:

> [B]ased on my many years as an ADA advocate and educator, I have
> concluded that education does not work, *notices do not work*, and
> businesses are indifferent to voluntary compliance. *Compliance comes*
> *almost exclusively from lawsuits.*

(Ex. B, ¶ 9)(italics added).

"Compliance" with the A.D.A., Mr. Norkunas went on:

> occurs almost exclusively as a result of private lawsuits. Voluntary
> compliance is abysmal. Businesses large and small simply wait until
> they are sued before they address their compliance obligations.

(Ex. B, ¶ 11).

As the Court concluded in *Payne v. Toys "R" Us-Delaware, Inc.*, case no: 9:15-cv-80497-JIC (S.D. Fla), Defendants have "little interest in fixing ADA violations until an aggrieved person and his attorney enters the picture" [D.E. 34]. That, of course, is exactly what the Defendant did here. Given that state of affairs, a plaintiff would be foolish to rely on a defendant's "mere promises" of repentance and reform, and is under no obligation to do so. *Kennedy & Cohen v. Miramar Plaza Partners, LLC.*, case no:0:15-cv-60196-JIC (S.D. Fla)[D.E. 26, p.8].

Any attempt by the Defendant to limit the consequences Congress imposed on violators of the law including paying the attorney's fees, costs, and litigation expenses, is nothing short of an impermissible attempt to impose a notice requirement where Congress has not done so. Ms. Kennedy's experience with giving notice, together with that of Mr. Norkunas, leaves little doubt that giving notice is an exercise in futility. As Judge Cohn's statement in *Toys R Us* suggests, but for lawsuits such as the present one, Congress might as well not passed the law.

## II. THE FACTS

### A."We Would Be Willing to Let the Court Determine the Amount of Attorney Fees, Costs and Litigation Expenses"
- Plaintiff's Counsel to Defendant, 8/23/2018

The Defendant's original *pro se* response was a telephone inquiry concerning settlement. The Plaintiff proposed three alternatives. The two of which are relevant here were:

> B .[W]e would be willing to settle for $6,500.00. The defendant must agree to bring its website into compliance with the requirements of 28 C.F.R. Section 36.302(e)(1) within 12 months and maintain it in said condition. There will be no notice/opportunity to cure clause and the release will be limited to the subject website. Plaintiff will not release any claims or potential claims pertaining to the physical aspects of the subject

4

property.

  C. As a third alternative, *we would be willing to let the court determine the amount of attorney fees, costs and litigation expenses*. This would require that the parties enter into a consent decree, conditioned on the court approving and retaining jurisdiction to enforce, per our form. The defendant must agree to bring its website into compliance with the requirements of 28 C.F.R. Section 36.302(e)(1) within 12 months and maintain it in said condition. There will be no notice/opportunity to cure clause and the release will be limited to the subject website. Plaintiff will not release any claims or potential claims pertaining to the physical aspects of the subject property.

(Ex. C, 8/29/2018; 10.26 A.M.)(italics added)

  That e-mail concluded, "Should you wish to obtain counsel, by all means feel free to do so," (*id*.). After some further correspondence, all of which is included in Exhibit "C," the Defendant responded, "We want to settle for the option B $6,500.00," (Ex. C, 8/30/2018; 11:27 A.M.). The result of the Defendant's written acceptance was an enforceable settlement agreement, *Reed v. United States,* 717 F. Supp. 1511, 1514-15 (S.D. Fla 1988).

  Within hours of his client's written acceptance, their newly hired attorney, Daniel R. Levine, Esq., announced that his client was refusing to honor the agreement the latter had just made. Mr. Levine went on to say:

  I am authorized to resolve the case by way of an agreement or consent decree, requiring the defendant to remedy/cure any and all violations at issue, as alleged in the complaint, within a reasonable period of time not to exceed one (1) year, along with our agreement that the Court allow you, as prevailing party, a reasonable attorney's fee, including litigation expenses, and costs.

(Ex. D, 8/30/2018; 4:46 P.M.).

  Conspicuously absent from the Defendant's new proposal was an agreement to *maintain* the websites, *Hooters of America, supra*. Unlike the settlement agreement, the Defendant's latest both subjected his conduct to Court supervision and insured that this

litigation, instead of being over, would continue.

As of the date on which the Defendant's new proposal was made, the only pleadings signed on behalf of the Plaintiff were the complaint, a notice of related cases, notice of interested parties, and answers to the Court's interrogatories. That, and the plain language of Rule 11, *Fed.R.Civ.P.,* requiring the *signing* of a paper notwithstanding, Mr. Levine then served what purported to be a Rule 11 motion based on the claim that the undersigned had not accepted the Defendant's new settlement proposal ( Ex. E). In addition to ignoring the plain language of Rule 11, Mr. Levine attempted to schedule a hearing to address what was described as the Plaintiff's "bad faith litigation conduct" [D.E. 8] while ignoring the requirements of Local Rule 3.01(j). The basis for that motion was, likewise the fact that the Plaintiff had not accepted the Defendant's new settlement proposal. Websites, by definition are fluid, *See Nat'l Fed'n of the Blind v. Target Corp*., 582 F. Supp. 2d 1185 (N.D. Cal. Sept. 28, 2007). As noted, the Defendant's new proposal left out the crucial requirement to maintain. Mr. Levine's attitude throughout was, "I guess we will let Judge Moody sort it out," (Ex. D, 8/31/2018; 11:07 A.M.).

While maintaining her position that the case had been settled, in a further attempt at resolution, Ms. Kennedy tendered a consent decree along the lines set our above with the Court determining the amount of attorney's fees, litigation expenses, and costs. The Defendant ignored it for well over a month. It was only in response to another inquiry that Mr. Levine provided an outline of what he considered acceptable. The Plaintiff tendered a second consent decree based on what Mr. Levine said.

The belated response came from Erica Gonsalves, Esq., an associate with Mr. Levine's law firm. Ms. Gonsalves wanted still different terms. Throughout the discussions that

6

followed, the Defendant continued to insist on various changes. Eventually, the Parties came to

terms and, on December 7, 2018 this Court granted the parties' Motion for Entry of Consent

Decree. That order [D.E.13] required the Defendant to bring the websites into compliance with

Section 36.302(e)(1) and *maintain* those websites in a state of compliance. The Court reserved

jurisdiction for a period of two years to enforce the terms of the consent decree and to determine

the amount of attorney's fees, litigation expenses, and costs to which the Plaintiff was entitled.

Comparing Option "B," to which the Defendant initially agreed and Option "C"

which was the end result, reflects that, unlike the former, the latter both subjects the Defendant

to Court supervision and created a situation in which the expenditure of additional attorney time

was inevitable.

## III. A PREVAILING PLAINTIFF IS ENTITLED TO RECOVER HER ATTORNEY FEES, LITIGATION EXPENSES AND COSTS

Based on this Court's order [D.E. 13], the Plaintiff is the prevailing party under

*Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.,* 532 U.S. 598

(2001). Both for that reason, and under 42 U.S.C. 12205, the Plaintiff is entitled to recover her

Attorneys' fees, litigation expenses and costs. In a civil rights case, the amount of an award of

attorneys fees is calculated by determining  the  reasonable hourly rate for the legal services

involved and multiplying that rate by the number of hours reasonably expended.  *See,  Hensley v.*

*Eckerhart*, 461 U.S. 424, 433 (1983). Factors to be considered when setting a fee include: (A)

the amount involved and the results obtained; (B)  the time and labor required; ( C) the novelty

and difficulty of the issues; (D) the skill required to perform the legal services properly; (E) the

preclusion of other employment; (F) the customary fee; (G) whether the fee is fixed or

contingent; (H) the time limitations imposed by the client or circumstances; (I) the experience, reputation and ability of the attorneys; (J) the undesirability of the case; (K) the nature and length of the professional relationship with the client; and (L) awards in similar cases. *Hensley, supra*, p. 429-430, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

### A. "My Normal and Customary Hourly Rate is $450.00 Per Hour."
– Daniel R. Levine, Esq. (Ex. F, ¶ 14 ).

Plaintiff's attorney has significant litigation experience in both Federal and State Court and has significant experience in civil rights cases, including ADA Title III litigation. He has been practicing for over forty years. He is admitted to the Bar in both Florida and Pennsylvania. He is also admitted to practice before the United States District Court for the Southern District of Florida, the United States District Court for the Middle District of Florida, the United States District Court for the Northern District of Florida, the United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court. Mr. Cullen has handled numerous civil rights cases over the years including employment discrimination cases. He has been counsel of record in over two hundred A.D.A. cases throughout the state. He has also taught in law school and served on the editorial board of the *Florida Bar Journal*. His resume accompanies this motion as Exhibit "G." Mr. Cullen seeks an hourly rate of $420.00 per hour.

Perhaps the most directly relevant authority for a fee award at that rate is the Defendant's own lawyer. In an affidavit filed in an ADA case, *Kennedy v. Bonom Enterprises, Inc.*, case no: 0:18-cv-62175-BB (S.D. Fla.), Mr. Levine swore that his "normal and customary hourly rate is $450.00 per hour.  Mr. Levine went on to say that "I charge the same hourly rate to

8

all of my hourly clients, regardless of whether they are the plaintiff or defendant, and regardless

of the type of case," (Ex. F, ¶ 15). Mr. Levine's affidavit also includes his qualifications. Aside

from bar association activities, or asserting "super lawyer" status, the Plaintiff's counsel has

twenty years' more directly relevant litigation experience than the $450.00 per hour Mr. Levine.

The latter is not the only defense attorney who charges similar rates. Denise Wheeler Wright of

Ford Harrison's Ft. Myers office bills at $420.00 per hour (Ex. H).

        Mr. Levine's affidavit likewise refers to a wage and hour case in which he

represented the Plaintiff. His time affidavit from *Lord v. Delivery Dudes LLC et al.*,

Case 9:18-cv-80665-RLR (S.D. Fla) accompanies this motion as Exhibit "I." As is the case with

ADA cases, FLSA litigation is sometimes derided as a forms driven practice and, therefore,

something that requires no real effort or ability. Mr. Levine sought almost eleven thousand

dollars for a case with a total of fifteen (15) docket entries. He sought $1,400.00 just for

preparing the complaint and related documents. Mr. Levine's sworn statements clearly establish

the time, expense, and expertise effective federal court litigation actually requires or, in terms of

the *Johnson* factors, the novelty and difficulty and the skill required to represent an ADA

plaintiff properly. While the Plaintiff acknowledges that fee awards to her counsel have varied

over the years from $420.00[2] per hour and $300.00[3] per hour, she submits that, in light of the

---

[2]In *Houston v. South Bay Investors, etc.,* case number 9:13-cv-80193-DTKH (S.D. Fla.)*,* the Court determined that $420.00 per hour was a reasonable fee for the undersigned [D.E. 12]; *Access for the Disabled, etc., et. al., v. EDZ, Inc*., case no: 8:12-cv-2186-EAJ (M.D.Fla.) (same)[D.E. 85]. *See, Houston v. Arshak Corp*., case no: 0:13-cv-60752-RNS (S.D. Fla 2103)($420.00 per hour awarded to attorney with nineteen years' experience); *Hoewischer v. Mardini*, Case No. 3:12-cv-3-J, slip op. at p.3  (M.D. Fla. 9/28/12)(awarding hourly rate of $420.00).

Congressional mandate, to say nothing of Mr. Levine's affidavit, an award calculated at a rate less than $420.00 is unwarranted.

Additional factors supporting the award the Plaintiff seeks include the act that this case was handled on a contingent fee basis, that Ms. Kennedy is a long time client, and the negative publicity and attitude that many have toward Title III ADA actions deter attorneys from representing undertaking such cases. Thus, civil rights plaintiffs' work is oftentimes undesirable. As explained in *Johnson v. Georgia Highway Exp., Inc.* , 488 F.2d 714, 719 (5th Cir. 1974):

> Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant.... Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries. This can have an economic impact on his practice which can be considered by the Court.

This Court need look no further than the Defendant's own filings for evidence of that hostility. As noted above, the relief sought in the Plaintiff's complaint and which she ultimately obtained, was an order requiring the Defendant to both bring its web presence into compliance and *maintain* it in that state. When the Plaintiff did not agree to the Defendant's proposal to do no more than bring the websites into compliance but not to maintain them, the Defendant accused the Plaintiff of "bad faith litigation" [D.E. 8] and served a Rule 11 motion that did not so much as allege a deficiency in any signed paper. Assuming the Defendant's counsel read what he signed, on which subject, see Rule 11, Mr. Levine was fully aware of the fact that his settlement proposal did not address the issue of maintenance and thus did not

---

[3] *e.g., Access for the Disabled, Inc. et al. v. Bear Ice, Inc.*, Case No. 13-CV-60031-WJZ (S.D. Fla. September 18, 2013).

provide the Plaintiff all of the relief to which she was entitled and ultimately obtained.

        As baseless and self serving as they may be, the Defendant's accusations are public record. While not too many members of the general public review court files, lawyers do. Those who represent Plaintiffs in A.D.A. cases would recognize Mr. Levine's statements as part of a cottage industry of sorts in which certain members of the defense Bar seek to justify fees in excess of four hundred ($400.00) dollar per hour by demonizing plaintiffs and those who have the temerity to represent victims. To attorneys not involved in civil rights cases, members of the press, and others, the client relations aspect of that client pandering amounts to privileged defamation and is the classic example of why handling civil rights cases is "undesirable."

        The attorney's fees provision in the ADA is the Congressionally chosen mechanism for enforcing the law. In the absence of a fee award sufficient to encourage lawyers to be willing to undertake cases such as this, the ADA is rendered moot.

        Appended to this motion and identified as Exhibit "J," is a copy of the time records of Plaintiff's counsel documenting the time and effort was required to obtain the resolution of this case. In addition, the time expended by Plaintiff's counsel in drafting this motion is included. In general, time incurred by Plaintiff's counsel in filing, preparing and litigating this fee application and any fee hearings thereon is compensable.  *See Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990); *Johnson v. State of Mississippi*, 606 F.2d 635 (5th Cir. 1979). As set forth in Exhibit "J" Plaintiffs' counsel spent 35.2 hours working on this case. In addition, there were 1.6 hours of paralegal time involved. This time was reasonable and necessary to bring this matter to conclusion with the beneficial results obtained. Those results, as noted, were a consent decree requiring the Defendant to

award the Plaintiff the full scope of the relief she requested including ordering the Defendant to *maintain* his web presence in a state of compliance – something, it will be recalled, the Defendant resisted and resisted to the point of threats of sanctions.

## IV. COSTS AND LITIGATION EXPENSES.

### A.  Costs

Taxable costs listed, in Exhibit "J," total $465.00.

### B. Litigation Expenses.

Additionally, in civil rights actions, a prevailing party may recover expenses not normally available under § 1920. *See Dowdell v. City of Apopka*, 698 F. 2d 1181, 1189-92 (11th Cir 1983). Such additional expenses cover "with the exception of routine overhead, normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of the settlement of the case." *Id* at 1192.  *Dowdell* reversed the lower court for its refusal to tax travel, telephone and postage expenses as costs.

In *Davis v. Mason County*, 927 F. 2d 1473, 1488 (9th Cir. 1991), the Ninth Circuit discussed the recovery of travel expenses under 42 USC 1988,

> " Mason County fails to see that like the expert witness fees, the travel expenses
> were not granted as costs under section 1920, but rather as out-of-court expenses
> compensable under section 1988. Courts have generally held that expenses
> incurred during the course of litigation which are normally billed to fee-paying
> clients should be taxed under section 1988. *Dowdell*, *supra* at 1190, *Palmigano
> v. Garraby*, 707 F. 2d 636,637 (1st cir 1983); *Northcross v. Board of Education*,
> 611 F. 2d 624, 639 (6th Cir. 1979); cert. denied, 447 U.S. 911 (1980). As the
> Eleventh Circuit said in *Dowdell:*
> > " Reasonable attorney's fees' under the (Attorney's Fee Awards) Act
> > must include reasonable expenses because attorney's fees and expenses are
> > inseparably intertwined as equally vital components of the cost of litigation. The
> > factually complex and protracted nature of civil rights litigation frequently
> > makes it necessary to make sizeable out -of- pocket expenses which maybe
> > essential to success as the intellectual skills of the attorneys. If these costs are not

taxable, and the client, as is often the case, cannot afford to pay for them, they must be borne by counsel, reducing the fees award accordingly. Thus, following the reasoning adopted in upholding the award of expert witness fees, we also affirm the district courts award of travel expenses pursuant to section 1998."

In this case, the Plaintiff is seeking $600.00 for the initial investigation and documentation of the Plaintiff's visit to the Defendant's websites and the documentation of the violations. Those expenses are fully itemized in  Exhibit "J."

As set forth above, as itemized in Exhibit "J," the Plaintiff's attorneys' fees and litigation expenses are as follows:

 (a)      To date, the Plaintiff has incurred $ 14,784.00 for attorneys' fees based on an hourly rate of $420.00 per hour for legal services, and paralegal fees of $ 184.00 based on $115 per hour for the paralegal.  Plaintiffs' counsel certifies that he has fully reviewed the time records and supporting data and that the motion is well grounded in fact and is justified.

(b) Plaintiffs have further incurred litigation expenses in the total amount of  $ 600.00.

( c) Costs total: $465.00.

Thus, Plaintiffs' total attorney fees, costs and litigation expenses are $ 16,033.00 In the event this matter is not resolved, the Plaintiff will file a supplemental motion.

## V CONCLUSION.

Civil rights laws in general depend heavily upon private enforcement. *Hensley v. Eckerhart*, 461 U.S. 424, 445(1983). Where the ADA is concerned,  "private enforcement suits are the primary method of obtaining compliance with the Act," *D'Lil v. Best Western Encina Lodge & Suites*, 538 F. 3d 1031, 1036 (9th Cir 2008). Because of the importance of the federal rights private enforcement actions vindicate, such actions are, as the Supreme Court noted, "private in form only." *Guardian Ass'n v. Civil Service Comm'n*, 463 U.S. 582 (1983). As the

Eleventh Circuit phrased it, "successful civil rights actions vindicate a public interest ...[and]

[p]ublic benefit is a distinct measure of success in civil rights actions and ... a court must

account for that distinct measure of success when calculating an award of fees and costs,"

*Villano v. Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001). Thus, an fee award sufficient to

insure that civil rights plaintiffs have the means to retain competent counsel is essential if

private citizens are to have a meaningful opportunity to vindicate the important Congressional

policies embodied in civil rights laws such as the ADA.

    **WHEREFORE**, Plaintiff respectfully move this Court award her her attorney's

fees, litigation expenses, and costs as requested above in the amount of $ 16,033.00.


                    *s/Philip Michael Cullen, III*
                    Fla. Bar No: 167853
                    **Philip Michael Cullen, III**
                    Attorney-at-Law – Chartered
                    621 South Federal Highway, Suite Four
                    Fort Lauderdale, Florida 33301
                    Telephone: (954) 462-0600
                    Facsimile: (954) 462-1717
                    e-mail: CULLENIII@aol.com



    **I HEREBY CERTIFY** that, prior to the filing of this motion, I consulted with

opposing counsel. Specifically, I provided the Defendant with a preliminary copy of my time

records. I subsequently spoke with the Defendant's counsel concerning the same subject. While

the possibility of a further response from Defendant's counsel remained open, nothing was

resolved except for the Defendant's agreement that the Plaintiff was entitled to recover her

filing fee ($400.00) and the fee for service ($65.00). I intend to again contact Defendant's

counsel concerning the subject matter of this motion.

        **I FURTHER CERTIFY** that, on January 4, 2019, I electronically filed the

foregoing  with the Clerk of the Court using the CM/ECF system which will automatically send

e-mail notification of such filing to the attorneys of record.

 

        */s/Philip Michael Cullen, III*
        Fla. Bar No: 167853
        **Philip Michael Cullen, III**
        Attorney-at-Law – Chartered
        621 South Federal Highway, Suite Four
        Fort Lauderdale, Florida 33301
        Telephone: (954) 462-0600
        Facsimile: (954) 462-1717
        e-mail: CULLENIII@aol.com